# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

No. 21-5116

September Term, 2022

FILED ON: December 6, 2022

MONTE SILVER AND MONTE SILVER, LTD., AN ISRAELI CORPORATION,
APPELLANTS

v.

INTERNAL REVENUE SERVICE, ET AL.,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:19-cv-00247)

Before: PILLARD and KATSAS, *Circuit Judges*, and ROGERS, *Senior Circuit Judge*

## J U D G M E N T

This appeal was considered on the record from the district court and on the briefs and arguments of the parties. The Court has afforded the issues full consideration and has determined that they do not warrant a published opinion. *See* Fed. R. App. P. 36; D.C. Cir. R. 36(d). For the reasons stated below, it is:

**ORDERED** that the district court's merits judgment be **AFFIRMED** and that the appeal of its ruling on the motion to seal be **DISMISSED**.

This case involves taxes imposed on United States shareholders who control foreign corporations. 26 U.S.C. §§ 951–965. Before 2017, such shareholders generally incurred tax liability only upon receipt of a corporate dividend. But the Tax Cuts and Jobs Act of 2017 modified this scheme going forward, and it imposed a one-time "transition" tax on shareholders based on the tax-deferred earnings of controlled foreign corporations between 1987 and 2017. *Id.* § 965.

The Regulatory Flexibility Act (RFA) requires agencies to analyze the impact of their regulations on small businesses. 5 U.S.C. §§ 603, 604. The RFA does not apply if the agency certifies that the regulation at issue will not have a significant impact on a substantial number of small entities. *Id.* § 605(b). The Internal Revenue Service made such a certification in promulgating regulations to implement the transition tax. *Regulations Regarding the Transition Tax Under Section 965 and Related Provisions*, 84 Fed. Reg. 1,838, 1,873 (Feb. 5, 2019).

Monte Silver, a U.S. citizen, owns and controls Monte Silver, Limited, a foreign corporation. On his 2017 tax return, Silver made the election permitted by 26 U.S.C. § 962, which allows an individual shareholder to have income from controlled foreign corporations taxed as if the shareholder were a domestic corporation. As a result of his section 962 election, Silver incurred no transition tax liability.

In this lawsuit, Silver and Limited contend that the transition tax regulations have a significant impact on a substantial number of small entities, and thus were promulgated in violation of the RFA. On summary judgment, the district court held that the plaintiffs lacked Article III standing to challenge the regulations. The court further held that the IRS, in defending this lawsuit, did not unlawfully file Silver's 2017 tax return on the public record in this case.

We agree with the district court that neither plaintiff has Article III standing to challenge the regulations. To establish standing, a plaintiff must show that it has suffered an injury fairly traceable to the defendant's challenged action and likely to be redressed by a favorable court ruling. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). The plaintiff must prove standing "with the manner and degree of evidence required at the successive stages of the litigation." *Id.* at 561. Thus, in resisting summary judgment, the plaintiff may not rest on "mere allegations," but "must set forth by affidavit or other evidence specific facts" supporting standing. *Id.* (cleaned up).

The plaintiffs claim standing based on their past and future compliance costs. In the past, Silver spent time and money to determine his potential transition tax liability and to make his section 962 election. But the plaintiffs here seek only prospective relief declaring the RFA certification unlawful, staying enforcement of the regulations, and remanding for the IRS to comply with the RFA. They do not seek compensation for past compliance costs, which are thus not redressable in this case. Nor do any past injuries suffice to show a likelihood of future injuries redressable by prospective relief. *See*, *e.g.*, *Am. Soc'y for Prevention of Cruelty to Animals v. Ringling Bros. and Barnum & Bailey Circus*, 317 F.3d 334, 336 (D.C. Cir. 2003); *Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983).

Silver alleges that his section 962 election will subject him to future compliance costs whenever Limited pays a dividend. But the plaintiffs have not explained how those costs are traceable to the transition tax regulations—as opposed to the transition tax statute, other provisions of the Internal Revenue Code, other tax regulations besides the ones challenged here, or other sources of law such as tax treaties. The plaintiffs do not allege that anything in the transition tax regulations (as opposed to the statute) required or even incentivized Silver to make the section 962 election in the first place. Nor do the plaintiffs explain how the regulations cause any compliance costs flowing from the election. To the contrary, the plaintiffs' most specific allegation on this point is that Silver "must comply with a wide variety of the most complex tax laws in the IRC, such as foreign tax credit accounting, allocation between dividends tainted and not tainted by the 962 election, a bilateral tax treaty, qualified/non-qualified dividends, etc." Plaintiffs' Memorandum in Opposition to Defendants' Cross Motion for Summary Judgment, *Silver v. IRS*, No. 19-cv-247 (D.D.C.), ECF Doc. 61 at 5. On its face, this account ties Silver's future compliance costs to various statutory provisions and a treaty, not to the regulations that he seeks to challenge.

Because the plaintiffs' past compliance costs are not redressable and their future compliance costs are not traceable to the transition tax regulations, we affirm the district court's conclusion that the plaintiffs lack Article III standing to challenge the regulations. Given this disposition, we need not reach the questions whether the Anti-Injunction Act bars this lawsuit or whether the RFA affords a cause of action to the plaintiffs.

While litigating the merits, the IRS filed Silver's tax return on the public record. The plaintiffs argued that this violated 26 U.S.C. § 6103, which generally requires the IRS to keep tax return information confidential. The district court held that this case fell within a statutory exception permitting disclosure in any "proceeding pertaining to tax administration." J.A. 162–63; *see* 26 U.S.C. § 6103(h)(4). But the court provisionally sealed the tax return pending further consideration of whether sealing was nonetheless appropriate under *United States v. Hubbard*, 650 F.2d 293 (D.C. Cir. 1980). J.A. 164–65. The plaintiffs seek to appeal the ruling that section 6103 does not apply. We lack jurisdiction to review it because the sealing question is collateral to the merits, *see In re Sealed Case*, 237 F.3d 657, 664–65 (D.C. Cir. 2001), yet the section 6103 question decided by the district court is not collateral to the *Hubbard* question that the order on appeal left open. In short, because the sealing order made no final decision on whether parts of Silver's tax return should remain confidential, we lack appellate jurisdiction under 28 U.S.C. § 1291.

At oral argument, the plaintiffs sought to cure this jurisdictional problem by promising to abandon their argument for sealing under *Hubbard*. They then filed a notice with the district court stating: "Plaintiffs hereby notify the Court that subject to the Appeals court indeed ruling on the wrongful disclosure matter, plaintiffs waive any *Hubbard* or other rights they have to maintain their tax returns sealed." Notice of Plaintiffs' Waiver of Right to Seal Confidential Records Under *United States v. Hubbard*, *Silver v. IRS*, No. 19-cv-247 (D.D.C.), ECF Doc. 84 at 3. This filing does not give us jurisdiction to review the sealing order from which the plaintiffs have appealed. Our jurisdiction extends only to that order, *see* Fed. R. App. P. 3(c)(1)(B), and it made no final sealing decision. The plaintiffs could not retroactively convert the interlocutory order before us into a final decision through post-appeal filings definitively abandoning arguments otherwise pending in the district court. Still less may they do so through post-appeal filings promising to abandon otherwise live arguments on the condition that we treat the interlocutory order before us as if it were final.

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate until seven days after resolution of any timely petition for rehearing or petition for rehearing *en banc*. *See* Fed. R. App. P. 41(b); D.C. Cir. R. 41(a)(1).

**<u>Per Curiam</u>**

**FOR THE COURT:**
Mark J. Langer, Clerk

BY:    /s/
Daniel J. Reidy
Deputy Clerk